IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:18-CT-3118-D

MIGUEL MARQUEZ-MARTINEZ, a/k/a )
BRIANNA MARQUEZ-MARTINEZ, )
)
                Plaintiff, )
) **ORDER**
          v. )
)
UNITED STATES OF AMERICA, et al., )
)
              Defendants. )

On May 21, 2018, Miguel Marquez-Martinez a/k/a Brianna Marquez-Martinez ("Marquez-Martinez" or "plaintiff"), a former federal inmate proceeding through counsel, filed a complaint against the United States of America and various employees of the Federal Correctional Complex in Butner, North Carolina ("Butner") [D.E. 3]. On October 15, 2018, the United States filed a certification of scope of employment and notice of substitution for defendants Warden J.C. Holland, Nurse Reed,[1] Officer Reyes, Angela Walden Weaver, and Counselor Wiggins (the "individual defendants") [D.E. 36, 38], moved to dismiss Marquez-Martinez's complaint [D.E. 39], and filed a memorandum in support [D.E. 40, 41].[2] These defendants also requested leave to file a responsive pleading and to stay discovery pending the court's ruling on the motion to dismiss [D.E. 60, 61].[3]

---

[1] The proper spelling of this defendant's name is "Reid." See [D.E. 41] 1 n.1.

[2] On November 26, 2018, Marquez-Martinez responded in opposition [D.E. 47]. On December 11, 2018, the United States replied [D.E. 50].

[3] On March 26, 2019, Marquez-Martinez responded in opposition to the motion for leave to file a responsive pleading [D.E. 64]. On April 23, 2019, the individual defendants replied [D.E. 67].

On January 4, 2019, Calvin Terrance Davis ("Davis") answered the complaint [D.E. 56]. As explained below, the court grants in part the pending motions.

I.

Marquez-Martinez is a transgender woman and a citizen of Mexico. Compl. [D.E. 3] ¶¶ 1, 25. In October 2015, Marquez-Martinez entered the United States seeking asylum based on harassment and sexual violence that she experienced due to her gender identity. See id. ¶¶ 26–27. In particular, Marquez-Martinez alleges that she "was kidnapped by sex traffickers, held hostage, drugged, and repeatedly raped." Id. ¶ 26; see id. ¶¶ 27, 30. Although the United States eventually granted Marquez-Martinez's asylum request, she initially was "detained in federal custody on grounds that her entry to the country was a federal crime." Id. ¶ 28. Before being detained, Marquez-Martinez had started hormone treatments in order to transition and presented as a woman (i.e., Marquez-Martinez's "physical appearance was 'traditionally' feminine"). See id. ¶¶ 2–3, 39.

In February 2016, Marquez-Martinez was transferred to the Federal Medical Center at Butner ("FMC Butner") for a competency evaluation and Butner staff knew that she was a transgender woman. See id. ¶¶ 30–31, 36–38. While at Butner, Marquez-Martinez experienced "constant sexual harassment and assault, including by staff." Id. ¶ 34. For example, Marquez-Martinez alleges that she experienced "frequent unjustified strip-searches and pat-downs in which" correctional officers examined, touched, and groped "[her] body, including her breasts and genitals," that correctional officers, without justification, frequently watched her shower and undress, and that individuals verbally harassed her based on her "gender identity, attire, and physical appearance," including "the size and shape of her body, . . . her breasts, and the details of her genitalia." Id. ¶¶ 44–55. Additionally, Marquez-Martinez alleges that Reyes, a correctional officer, "repeatedly tossed [her] cell" to harass and humiliate her, rather than for a legitimate reason. Id. ¶ 56. Marquez-Martinez

2

further alleges that several defendants "were aware of the harm being done to [her] and deliberately did not stop it." Id. ¶¶ 58–59. Marquez-Martinez also alleges that, when she "repeatedly complained" to several defendants "about the pervasive sexual harassment and assault," they did not intervene. Id. ¶ 61; see id. ¶¶ 63–64.

On May 18, 2016, Davis, then a Butner correctional officer, forced Marquez-Martinez to perform oral sex on him. Id. ¶¶ 6–7, 35, 69–79. During the assault, Marquez-Martinez could not breathe, repeatedly gagged, and Davis's belt buckle hit her in the face. See id. ¶¶ 75–76. After ejaculating in her mouth, Davis instructed Marquez-Martinez to wash up. Id. ¶ 78. Marquez-Martinez preserved two items of clothing (her shirt and brassiere) that she was wearing when Davis assaulted her because they contained Davis's semen. Id. ¶¶ 79, 81–82. However, based on the pervasive sexual harassment that she experienced, Marquez-Martinez "feared that Butner staff would destroy that evidence if she reported the rape," so she "kept the shirt in her own cell [and gave] the bra . . . to another prisoner to keep in his cell." Id. ¶¶ 80–82.

Once she "secured" the clothing containing Davis's semen, Marquez-Martinez reported the assault to Butner staff. Id. ¶ 83. Butner staff responded by "discouraging [her] from seeking legal remedies, knowingly failing to preserve vital evidence, and moving [her] to a different FCC Butner building, placing her in administrative segregation for several weeks, and restricting her access to recreation." Id. ¶ 8; see id. ¶¶ 84, 89–90, 92. For example, after Marquez-Martinez reported the assault, Butner staff members went to her cell and packed up her belongings, including the shirt containing Davis's semen. See id. ¶ 85. Although Marquez-Martinez told the staff members about the significance of the shirt, she alleges that they "did not preserve the evidence." Id. Marquez-Martinez also alleges that Warden Holland failed to preserve other evidence, including videotape evidence, even after he received a letter from her attorney "specifically instructing him to preserve"

3

the evidence. Id. ¶¶ 87–88; see id. ¶¶ 98–99.[4] Additionally, Marquez-Martinez alleges that Wiggins, a counselor, "retaliated against [her] by threatening to and attempting to punch or otherwise strike [her], causing [her] fear and apprehension." Id. ¶ 86. Marquez-Martinez further alleges that defendants restricted her access to recreation (e.g., by forcing Marquez-Marinez to spend recreation time alone) "because [they] learned that [she] was trying to vindicate her legal rights and seek redress for [d]efendants' violations of [her] legal rights." Id. ¶¶ 92–93.

Marquez-Martinez asserts numerous legal claims. See id. ¶ 110. First, Marquez-Martinez alleges a claim under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 et seq. See id. Next, Marquez-Martinez alleges claims under North Carolina law for intentional infliction of emotional distress ("IIED"), negligent infliction of emotional distress ("NIED"), negligence, assault and battery, injury to prisoner by jailer under N.C. Gen. Stat. § 162-55, obstruction of justice, and violating Article I, Section 19 of the North Carolina Constitution. See id. Finally, Marquez-Martinez alleges that defendants are liable "for their own direct infliction of injuries, for failing to intervene despite a known substantial risk of harm, and/or for their roles in the conspiracy under [North Carolina] common law or N.C. [Gen. Stat. § 99D-1]." Id. Marquez-Martinez seeks "compensatory damages, punitive damages, treble damages under N.C. [Gen. Stat. § 162-55], attorneys' fees, and any other relief [the court] deems appropriate." Id.

On May 22, 2017, the Federal Bureau of Prisons ("BOP") received an administrative tort claim that Marquez-Martinez filed against the United States, the BOP, Davis, and unidentified "Does 1 through 100." See Ex. 1 [D.E. 40-2] 1, 3; Ex. A [D.E. 47-1] 1, 3. In the claim, Marquez-Martinez

---

[4] The United States prosecuted Davis for assaulting Marquez-Martinez. See Compl. [D.E. 3] ¶¶ 96–100. Davis pleaded guilty to one count of sexual abuse of a ward in violation of 18 U.S.C. § 2243(b). See United States v. Davis, 5:17-CR-149-FL, [D.E. 10] (E.D.N.C. June 15, 2017).

4

alleged that she "was repeatedly victimized and sexually assaulted based on her transgender appearance and identification" and that "[o]fficials at FMC Butner failed to properly classify, house, and protect [her] from harm at the hands of other inmates and staff." E.g., [D.E. 40-2] 4. Marquez-Martinez further alleged that she "was repeatedly raped and sexually assaulted by fellow male inmates and ultimately, by [Davis]" on May 18, 2016. Id. Marquez-Martinez concluded that the United States was liable under the FTCA for assault, battery, negligence, IIED, and NIED and that Davis and other individuals were liable under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), for violating her Fifth and Eighth Amendment rights. See id. at 4–5.

II.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests subject-matter jurisdiction, which is the court's "statutory or constitutional power to adjudicate the case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (emphasis omitted); see Holloway v. Pagan River Dockside Seafood, Inc., 669 F.3d 448, 453 (4th Cir. 2012); Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 479–80 (4th Cir. 2005). A federal court "must determine that it has subject-matter jurisdiction over the case before it can pass on the merits of that case." Constantine, 411 F.3d at 479–80. "[T]he party invoking federal jurisdiction bears the burden of establishing its existence." Steel Co., 523 U.S. at 104; see, e.g., Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). In considering a motion to dismiss for lack of subject-matter jurisdiction, the court may consider evidence outside the pleadings without converting the motion into one for summary judgment. See, e.g., Richmond, Fredericksburg & Potomac R.R. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).

5

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 135 S. Ct. 2218 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's allegations must "nudge[ ] [her] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

A.

The United States first argues that the court lacks subject-matter jurisdiction over Marquez-Martinez's FTCA claims of conspiracy, transfer and retaliation, and obstruction of justice because Marquez-Martinez did not include these claims in her administrative tort claim. See [D.E. 41] 10. Under the FTCA's notice-of-claim provision,

> [a]n action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have

6

been finally denied by the agency in writing and sent by certified or registered mail. 28 U.S.C. § 2675(a). Failure to administratively exhaust an FTCA claim is a jurisdictional defect and deprives a district court of subject-matter jurisdiction. See Kokotis v. U.S. Postal Serv., 223 F.3d 275, 278 (4th Cir. 2000); Plyler v. United States, 900 F.2d 41, 42 (4th Cir. 1990).

The notice-of-claim requirement "is an eminently pragmatic one: as long as the language of an administrative claim serves due notice that the agency should investigate the possibility of particular (potentially tortious) conduct and includes a specification of the damages sought, it fulfills the notice-of-claim requirement." Dynamic Image Techs., Inc. v. United States, 221 F.3d 34, 40 (1st Cir. 2000); see Estate of Trentadue ex rel. Aguilar v. United States, 397 F.3d 840, 852–53 (10th Cir. 2005). The administrative claim's language must provide the agency with "notice of the facts and circumstances underlying a claim rather than the exact grounds upon which [the] plaintiff seeks to hold the government liable." Trentadue, 397 F.3d at 853; see Dynamic Image Techs., 221 F.3d at 40; Drew v. United States, 217 F.3d 193, 198 (4th Cir. 2000), vacated and reh'g en banc granted (Sept. 8, 2000), aff'd by equally divided court without opinion sub nom., Drew ex rel. Drew v. United States, 231 F.3d 927 (4th Cir. 2000) (en banc); Conn v. United States, 867 F.2d 916, 918–19 (6th Cir. 1989); Tilga v. United States, No. 14-256 JAP/RHS, 2014 WL 12783121, at *19 (D.N.M. Dec. 5, 2014) (unpublished). Thus, Marquez-Martinez did not have to list every potential cause of action in her administrative claim, and her administrative claim "gave the agency enough facts about the incidents to enable the Department of Justice to conduct a meaningful investigation." Tilga, 2014 WL 12783121, at *19. Thus, the court denies the motion to dismiss any conspiracy claim or obstruction of justice claim for failure to exhaust under the FTCA. However, the court grants defendants' motion to dismiss Marquez-Martinez's FTCA claim based on transfer and retaliation because Marquez-Martinez failed to address the claim in her response. Cf. [D.E. 47] 9–11.

7

B.

The United States argues that the court lacks subject-matter jurisdiction over Marquez-Martinez's FTCA claims for wrongful searches and wrongful transfer due to the discretionary function exception. See [D.E. 41] 11–15. Under the FTCA, the United States waives sovereign immunity for "the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1); see Millbrook v. United States, 569 U.S. 50, 51–52 (2013); Levin v. United States, 568 U.S. 503, 506 (2013); Anderson v. United States, 669 F.3d 161, 164 (4th Cir. 2011); Kerns v. United States, 585 F.3d 187, 194 (4th Cir. 2009). A prisoner "can sue under the [FTCA] to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." United States v. Muniz, 374 U.S. 150, 150 (1963) (footnote omitted); see Millbrook, 569 U.S. at 52. A plaintiff must "show that an unequivocal waiver of sovereign immunity exists." Welch v. United States, 409 F.3d 646, 651 (4th Cir. 2005). "If the plaintiff fails to meet this burden, then the claim must be dismissed." Id.

Under the FTCA's discretionary function exception, the United States is not liable under the FTCA for "[a]ny claim based upon . . . the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). "The discretionary function exception marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." Holbrook v. United States, 673 F.3d 341, 345 (4th Cir. 2012) (quotation omitted); see United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 808 (1984). However, "the FTCA's discretionary function exception does

8

not provide a blanket immunity against tortious conduct that a plaintiff plausibly alleges also flouts a constitutional prescription." Loumiet v. United States, 828 F.3d 935, 943 (D.C. Cir. 2016); see Medina v. United States, 259 F.3d 220, 225 (4th Cir. 2001).

In analyzing whether to apply the discretionary function exception, the court must first identify "the conduct at issue" that led to the alleged injury. S.R.P. ex rel. Abunabba v. United States, 676 F.3d 329, 332 (3d Cir. 2012). The court then employs a two-part test to determine whether the discretionary function exception bars Marquez-Martinez's claim. See United States v. Gaubert, 499 U.S. 315, 322–23 (1991). First, the court must determine whether the conduct "involve[d] an element of judgment or choice." Id. at 322 (quotation and alteration omitted); see Berkovitz ex rel. Berkovitz v. United States, 486 U.S. 531, 536 (1988); Holbrook, 673 F.3d at 345. "A government employee's conduct does not involve discretion where a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow and the employee has no rightful option but to adhere to the directive." Holbrook, 673 F.3d at 345 (quotations omitted). "Where, however, a regulation authorizes or requires employee discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." Id. (quotation omitted). Second, if the alleged conduct involves an element of judgment, the court must determine "whether that judgment is of the kind that the discretionary function exception was designed to shield." Gaubert, 499 U.S. at 322–23 (quotation omitted); see Berkovitz, 486 U.S. at 536; Holbrook, 673 F.3d at 345. "Because the purpose of the exception is to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy . . . the exception protects only governmental actions and decisions based on considerations of public policy." Gaubert, 499 U.S. at 323 (quotations omitted).

Marquez-Martinez alleges that the "strip-searches and pat-downs were not done in a good

9

faith effort to maintain or restore security or discipline," but rather "were meant to degrade and humiliate [Marquez-Martinez], to exert arbitrary control over her body, and to satisfy the perpetrators' own sexual desires and curiosities." Compl. [D.E. 3] ¶¶ 47–48. Marquez-Martinez also alleges that officers "repeatedly tossed [her] cell for no legitimate reason, motivated by a desire to harass and humiliate rather than by a legitimate justification." Id. ¶ 56. The United States responds that the discretionary function exception bars Marquez-Martinez's claims concerning cell searches and pat down searches because such searches are governed by BOP Program Statements and regulations that "impose[] no duty on BOP staff to determine how or when the searches are to be conducted." [D.E. 41] 13–14.

"When addressing claims of negligent pat down and metal detection searches, other courts have found that the discretionary function exception applies because officers maintain discretion in how to conduct the searches." Scarborough v. United States, No. 15-CV-242-KLM, 2017 WL 1243014, at *6 (D. Colo. Mar. 17, 2017) (unpublished) (collecting cases); see Alfrey v. United States, 276 F.3d 557, 565 (9th Cir. 2002); Calderon v. United States, 123 F.3d 947, 949 (7th Cir. 1997); Sledge v. United States, 723 F. Supp. 2d 87, 96 (D.D.C. 2010). By contrast, Marquez-Martinez alleges that correctional officers conducted cell searches and pat down searches in a manner that "cannot be said to be based on the purposes that the regulatory regime seeks to accomplish." Gaubert, 499 U.S. at 325 n.7; cf. Keller v. United States, 771 F.3d 1021, 1024 (7th Cir. 2014); Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 475–76 (2d Cir. 2006); Montez ex rel. Estate of Hearlson v. United States, 359 F.3d 392, 398 (6th Cir. 2004); Santana-Rosa v. United States, 335 F.3d 39, 44–45 (1st Cir. 2003); Padilla v. United States, No. LACV 09-5651, 2012 WL 12882367, at *6 (C.D. Cal. Oct. 9, 2012) (unpublished). Here, the court denies the motion to dismiss Marquez-Martinez's claim concerning the cell searches and pat down searches. Defendant may

10

reassert the discretionary function exception on a more complete record. See, e.g., Rich v. United States, 811 F.3d 140, 148 (4th Cir. 2015); Keller, 771 F.3d at 1024; Sledge, 723 F. Supp. 2d at 98. However, the court grants defendants' motion to dismiss Marquez-Martinez's FTCA claim based on wrongful transfer because Marquez-Martinez failed to address the claim in her response. Cf. [D.E. 47] 14–17.

C.

The United States argues that the intentional tort exception bars Marquez-Martinez's claims based on Davis's or other officers' intentional sexual abuse or harassment because these defendants were not acting within the scope of their employment. See [D.E. 41] 16–19. "[A] law enforcement officer's acts or omissions may give rise to an actionable tort claim under the FTCA" where the conduct "arise[s] from one of . . . six enumerated intentional torts and . . . the law enforcement officer's acts or omissions . . . fall within the scope of his office or employment." Millbrook, 569 U.S. at 55 (quotations omitted); see Ignacio v. United States, 674 F.3d 252, 255 (4th Cir. 2012). The court looks to North Carolina law to determine whether the officers' acts were within the scope of their employment. See Kerns, 585 F.3d at 194.

Under North Carolina law, "[a]n employer may be liable for a battery committed by its employee if it authorized the tortious behavior, if the act occurred while the employee was acting within the scope of his employment, or if the employer ratified the conduct after the fact." Wilson v. Gaston Cty., 145 F. Supp. 3d 549, 559 (W.D.N.C. 2015), aff'd, 685 F. App'x 193, 202 (4th Cir. 2017) (unpublished). "For an employee's wrongful act to be done in the scope of his employment, it must be in furtherance of the principal's business and for the purpose of accomplishing the duties of his employment." Watts v. Bell, 227 N.C. App. 456, 744 S.E.2d 496, 2013 WL 2189949, at *3 (2013) (unpublished table decision) (quotation omitted); see Medlin v. Bass, 327 N.C. 587, 589–91,

11

398 S.E.2d 460, 463–64 (1990); Mercier v. Daniels, 139 N.C. App. 588, 592, 533 S.E.2d 877, 880 (2000). To establish ratification, Marquez-Martinez must show that the United States "had knowledge of all material facts and circumstances relative to the wrongful act, and that the employer, by words or conduct, show[ed] an intention to ratify the act." Hogan v. Forsyth Country Club Co., 79 N.C. App. 483, 492, 340 S.E.2d 116, 122 (1986); see Jackson v. Kimel, 992 F.2d 1318, 1322 (4th Cir. 1993); Wilson, 145 F. Supp. 3d at 559.

Marquez-Martinez does not plausibly allege that defendants authorized the tortious behavior or that the behavior was within the scope of employment. Instead, Marquez-Martinez seeks to show that defendants ratified the behavior. "[W]hen the scope-of-employment issue is determinative of both jurisdiction and the underlying merits of an FTCA claim, dismissal under Rule 12(b)(1) is inappropriate, unless the jurisdictional allegations are clearly immaterial or wholly unsubstantial and frivolous." Kerns, 585 F.3d at 196. Marquez-Martinez alleges that correctional officers subjected her to "pervasive sexual harassment and assault . . . in the open" and that Warden Holland "was aware of [Davis]'s illegal conduct, but [he] did not preserve the relevant evidence, including videotape evidence." Compl. [D.E. 3] ¶¶ 44, 88. Marquez-Martinez's allegations are not clearly immaterial or wholly unsubstantial and frivolous. Although Marquez-Martinez "appears to face a daunting task with respect to" showing ratification, the court denies the motion to dismiss Marquez-Martinez's FTCA claims concerning Davis's or other officers' conduct to allow the parties "to conduct discovery" on the ratification issue. Kerns, 585 F.3d at 196.

D.

The United States moves to dismiss Marquez-Martinez's claims for negligence, NIED, obstruction of justice, common law civil conspiracy, injury to a prisoner by a jailer in violation of N.C. Gen. Stat. § 162-55, violation of N.C. Gen. Stat. § 99D-1, and violation of Article I, Section

12

19 of the North Carolina Constitution. See [D.E. 41] 19–26; Fed. R. Civ. P. 12(b)(6).

As for Marquez-Martinez's state constitutional claim, Marquez-Martinez did not respond to defendants' argument concerning dismissal of her claim under Article I, Section 19 of the North Carolina Constitution. Cf. [D.E. 47] 18–33. Accordingly, the court dismisses Marquez-Martinez's state constitutional claim.

As for Marquez-Martinez's claim for injury to a prisoner by a jailer, N.C. Gen. Stat. § 162-55 provides:

> If the keeper of a jail shall do, or cause to be done, any wrong or injury to the prisoners committed to his custody, contrary to law, he shall not only pay treble damages to the person injured, but shall be guilty of a Class 1 misdemeanor.

N.C. Gen. Stat. § 162-55. However, "the duty of care owed by the [BOP] to federal prisoners is fixed by 18 U.S.C. § 4042, independent of an inconsistent state rule." Muniz, 374 U.S. at 164–65. Thus, to the extent that N.C. Gen. Stat. § 162-55 conflicts with the duty fixed by 18 U.S.C. § 4042, the court grants the motion to dismiss. See id.; cf. Massay v. Fed. Corr. Inst.-Texarkana, 243 F. App'x 871, 873 (5th Cir. 2007) (per curiam) (unpublished); Friedman v. United States, 221 F.3d 1334 (table), 2000 WL 876391, at *3 (6th Cir. 2000) (unpublished); A.L.T. Corp. v. Small Bus. Admin., 801 F.2d 1451, 1462 (5th Cir. 1986); Mays v. Smith, No. 5:18-CT-3186-FL, 2019 WL 958401, at *7 (E.D.N.C. Feb. 27, 2019) (unpublished); Escamilla v. United States, No. EP-14-CV-246-FM, 2015 WL 12734050, at *3 (W.D. Tex. Jan. 29, 2015) (unpublished); Martinez v. United States, No. CIV-11-830-F, 2014 WL 1338119, at *12 n.11 (W.D. Okla. Mar. 28, 2014) (unpublished); Muhammed v. United States, 6 F. Supp. 2d 582, 594 (N.D. Tex. 1998).

As for Marquez-Martinez's conspiracy claims, Marquez-Martinez asserts a common law conspiracy claim and a claim under N.C. Gen. Stat. § 99D-1, which prohibits a conspiracy among

> [t]wo or more persons, motivated by race, religion, ethnicity or gender . . . to interfere

13

with the exercise or enjoyment by any other person or persons of a right secured by the Constitutions of the United States or North Carolina, or of a right secured by a law of the United States or North Carolina that enforces, interprets, or impacts on a constitutional right.

N.C. Gen. Stat. § 99D-1(a)(1). The United States cannot conspire with itself. See, e.g., Thomas v. Cumberland Cty. Bd. of Educ., No. 5:10-CV-552-FL, 2012 WL 1825798, at *6 (E.D.N.C. Jan. 27, 2012) (unpublished), report and recommendation adopted, 2012 WL 1825703 (E.D.N.C. May 18, 2012) (unpublished); Stanley v. Wentworth Voluntary Fire Dep't, Inc., No. 1:10-CV-380, 2011 WL 3665009, at *17 (M.D.N.C. Aug. 17, 2011) (unpublished); Iglesias v. Wolford, 539 F. Supp. 2d 831, 836–38 (E.D.N.C. 2008); see also Bowling v. United States, 740 F. Supp. 2d 1240, 1252 (D. Kan. 2010). Thus, the court grants the motion to dismiss Marquez-Martinez's conspiracy claims.

As for Marquez-Martinez's negligence claim, "the essential elements of negligence [are] duty, breach of duty, proximate cause, and damages." Camalier v. Jeffries, 340 N.C. 699, 706, 460 S.E.2d 133, 136 (1995); see Thomas v. Weddle, 167 N.C. App. 283, 286, 605 S.E.2d 244, 246 (2004). Proximate cause requires reasonable foreseeability. See, e.g., Hairston v. Alexander Tank & Equip. Co., 310 N.C. 227, 233–34, 311 S.E.2d 559, 565 (1984). Although a plaintiff need not prove that the precise injury that she suffered was foreseeable, a defendant is not liable for events that are merely possible. See Thomas, 167 N.C. App. at 286–87, 605 S.E.2d at 246–47; Williamson v. Liptzin, 141 N.C. App. 1, 10–11, 539 S.E.2d 313, 319 (2000). "The test of proximate cause is whether the risk of injury, not necessarily in the precise form in which it actually occurs, is within the reasonable foresight of the defendant." Williams v. Carolina Power & Light Co., 296 N.C. 400, 403, 250 S.E.2d 255, 258 (1979).

Marquez-Martinez has plausibly alleged that, as a transgender woman in an all-male prison, the injuries that she suffered were foreseeable. See Compl. [D.E. 3] ¶¶ 38, 40–41, 44, 59–61,

14

102–03. Thus, the court denies the motion to dismiss Marquez-Martinez's negligence claim.

As for Marquez-Martinez's NIED claim, to state a claim for NIED, Marquez-Martinez must plausibly allege that "(1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress . . . , and (3) the conduct did in fact cause the plaintiff severe emotional distress." Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A., 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990). "Allegations of intentional conduct, even when construed liberally on a motion to dismiss, cannot satisfy the negligence element of an NIED claim." McClean v. Duke Univ., 376 F. Supp. 3d 585, 616 (M.D.N.C. 2019) (alteration and quotation omitted); see Wilson v. Gaston Cty., No. 3:13-CV-58-GCM, 2013 WL 1891276, at *4 (W.D.N.C. May 6, 2013) (unpublished); Horne v. Cumberland Cty. Hosp. Sys., Inc., 228 N.C. App. 142, 149, 746 S.E.2d 13, 19 (2013). To the extent that Marquez-Martinez bases her NIED claim on the intentional acts of the correctional officers, the court grants the motion to dismiss. However, "[i]n North Carolina, evidence of negligent supervision by the supervisor of an employee can support a claim for negligent infliction of emotional distress." Pittman v. United States, No. 5:10-CV-517-BO, 2012 WL 113568, at *4 (E.D.N.C. Jan. 13, 2012) (unpublished). Thus, the court denies the motion to dismiss Marquez-Martinez's NIED claim to the extent that she bases it on negligent supervision. See id.

As for Marquez-Martinez's obstruction of justice claim, "any action intentionally undertaken by the defendant for the purpose of obstructing, impeding, or hindering the plaintiff's ability to seek and obtain a legal remedy will suffice to support a claim for common law obstruction of justice." Blackburn v. Carbone, 208 N.C. App. 519, 527 & n.6, 703 S.E.2d 788, 795 & n.6 (2010). Marquez-Martinez plausibly alleged that Butner staff failed to preserve certain evidence that impedes her ability to prosecute this civil action. Thus, the court denies the motion to dismiss Marquez-

15

Martinez's obstruction of justice claim. See Blackburn, 208 N.C. App. at 526–27, 703 S.E.2d at 795; Jones v. City of Durham, 183 N.C. App. 57, 59, 643 S.E.2d 631, 633 (2007).

III.

The United States and the individual defendants move "for leave to file a responsive pleading to [Marquez-Martinez]'s complaint should the Court determine [that she] has alleged a claim against the individual [d]efendants pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)." [D.E. 60] 1. Marquez-Martinez's complaint does not contain a Bivens claim. See Vaupel v. United States, 491 F. App'x 869, 874 (10th Cir. 2012) (unpublished).

Marquez-Martinez may file an amended complaint seeking to allege a Bivens claim by July 29, 2019, and all defendants shall have thirty days thereafter to respond. See Fed. R. Civ. P. 15(a)(3). The court notes, however, the difficulty that Marquez-Martinez faces in seeking to extend Bivens to the alleged circumstances of this case. See Ziglar v. Abbasi, 137 S. Ct. 1843, 1848–50, 1857–63 (2017); Doe v. Meron, No. 18-2024, 2019 WL 2838403, at *8–10 (4th Cir. July 3, 2019); Attkisson v. Holder, 925 F.3d 606, 620–22 (4th Cir. 2019); Tun-Cos v. Perrotte, 922 F.3d 514, 521–28 (4th Cir. 2019). If Marquez-Martinez does not file an amended complaint seeking to assert a Bivens claim, the court will dismiss all defendants other than the United States. See Fed. R. Civ. P. 12(e); cf. Iodice v. United States, 289 F.3d 270, 273 n.1 (4th Cir. 2002). The court will set a deadline for the parties' Rule 26(f) meeting by separate order.

IV.

In sum, the court GRANTS IN PART the United States's motion to dismiss [D.E. 39] and DISMISSES any FTCA claims for wrongful transfer and retaliation. See Fed. R. Civ. P. 12(b)(1). The court also DISMISSES any claim under Article I, Section 19 of the North Carolina Constitution, any conspiracy claim, any NIED claim based on the intentional tortious acts of the correctional

16

officer defendants, any claim under N.C. Gen. Stat. § 162-55 that is inconsistent with the duty in 18 U.S.C. § 4042, and Marquez-Martinez's request for treble damages. See Fed. R. Civ. P. 12(b)(6). The court GRANTS IN PART the motions for leave to file a responsive pleading and to stay discovery and expedite [D.E. 60, 61]. Marquez-Martinez may file an amended complaint seeking to allege a Bivens claim by July 29, 2019, and all defendants shall have thirty days thereafter to file a response. If Marquez-Martinez does not file an amended complaint seeking to assert a Bivens claim, the court will dismiss all defendants other than the United States. The court will set a deadline for the parties' Rule 26(f) meeting by separate order.

SO ORDERED. This 9 day of July 2019.

JAMES C. DEVER III
United States District Judge

17